UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

RICKY BELL,

    Plaintiff,

    v.                07-cv-1288

Dr. SETH OSAFO, et al.,

    Defendants.

Memorandum Opinion and Order

    Before the court are Defendants, Richard Birkey, Tiffanie Clark, John Dudek, Ed Huggins, Jackie Miller and Austin Randolph's summary judgment motion [67] brought pursuant to Local Rule 7.1(D) and F.R.C.P. Rule 56, Plaintiff's response [76] and Defendants' reply [77].

Standard

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient

evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999).  Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. 2009).  It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment.  Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997)).

Background

Plaintiff, an Illinois Department of Corrections inmate, files suit under 42 U.S.C. §1983 for alleged violations of his constitutional rights that occurred at Illinois River Correctional Center. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by failing to treat an unnamed illness.  Further, he alleges that Defendants discriminated against him because of his medical status and race when they denied him a job placement at the Illinois River Industries Bakery.   The defendants assert that Plaintiff has absolutely no evidence of any illness and therefore cannot be deliberately indifferent to a malady that does not exist.  Defendants further assert that Plaintiff has no evidence of any discrimination.  Defendants content that Plaintiff was not denied a job because of his race or medical status and that rather he was denied a job at the bakery administratively by the prison vote sheet process because the vote sheet said he was not qualified to handle food.  Defendants further assert that unfortunately, it turns out the vote sheet was incorrect and Plaintiff was in fact qualified to handle food. Defendants assert that this innocent mistake on the vote sheet does not rise to the level of a constitutional violation.  Further Defendants content that Plaintiff alleges that white inmates were hired instead of him, but he has no evidence of this and that in fact, the facts show that mostly African American inmates were hired at the bakery at the time in question.  Further, Defendants argue that it is impossible for Defendants to have discriminated against Plaintiff based on his medical status when he has no evidence whatsoever of this mystery illness.  On these bases, the Defendants argue they are entitled to summary judgment in this case.

2

Undisputed Material Facts[1]

1. Plaintiff alleges defendants discovered an illness Plaintiff had and then tried to cover it up. (Plaintiff's Deposition, pp. 6-7).
2. Plaintiff alleges the symptoms of his mystery illness are a runny stuffed up nose and pain in his kidneys, but does not know what the illness may be. (Plaintiff's Deposition, pp. 7).
3. Plaintiff has no medical records reflecting an illness. (Plaintiff's Deposition, p. 7).
4. No doctor has ever diagnosed Plaintiff with the "mystery" illness. (Plaintiff's Deposition, p. 26).
5. Plaintiff has not been diagnosed with HIV, Tuberculosis or Hepatitis. (Plaintiff's Deposition, pp. 31-32).
6. Defendants are not medically trained and did not provide medical care to Plaintiff. (Defendants Affidavits).
7. Plaintiff was denied a job in the bakery by the institutional vote sheet. (Exhibit A; Birkey Affidavit, ¶4).
8. The institutional vote sheet is the process by which inmates are administratively approved or denied for institutional jobs at Illinois River Correctional Center. During the vote sheet process the screening committee makes recommendations to the Warden as to whether an inmate should be assigned a particular job. The screening committee is made up of various prison staff. The screening committee ensures that a job assignment for a particular inmate is appropriate, taking into consideration the inmate's background and history. (Birkey Affidavit, ¶¶3 and 4).
9. The only Defendant involved in the vote sheet process was Defendant Birkey. (Exhibit A; Dudek Affidavit, ¶4; Randolph Affidavit, ¶2; Huggins Affidavit, ¶3; Miller Affidavit, ¶3; Clark Affidavit, ¶5).
10. Regardless of Plaintiff's position on the list of inmates approved by the bakery for hire, Plaintiff could not work at the bakery unless approved through the vote sheet process. Being approved for hire by the bakery merely means that an inmate has submitted the required documentation to the bakery to be considered for hire. An inmate must be approved by the vote sheet process before they can be hired for any institutional job, including the bakery. (Clark Affidavit, ¶4).

---

[1] Exhibits can be found attached to Defendants' memorandum of law [68], except where otherwise noted. In his response, Plaintiff attempts to dispute many of the material facts, but he has no evidence other than a self serving affidavit. It is put up or shut up time. Further, Plaintiff attached no medical records. Further, an example of a dispute which is really not a dispute: Fact number 7. Defendants asserts plaintiff was denied a job in the bakery by the institutional vote sheet and supports that fact with the vote sheet at Exhibit A and Birkey's Affidavit at par. 4. In response, plaintiff lists fact number 7 as disputed and asserts that he was approved to work th3 11 am to7 am shift and points to Exhibit A. This does not dispute the fact that he was denied a job in the bakery by the vote sheet. Many, in fact most of the plaintiff's attempts to dispute are similar and because it so clear, the court will not address each and every one of those failed attempts to dispute.

3

11. Defendant Birkey recommended that Plaintiff not be assigned a job in the bakery at Illinois River Correctional Center. Defendant Birkey based this decision on the belief that Plaintiff was deemed not qualified to handle food by the Illinois River Health Care Unit. The vote sheet that Plaintiff received indicated through a checked box that Plaintiff was not qualified to handle food. As all inmates who work in the bakery must be qualified to handle food, Defendant Birkey recommended Plaintiff not be assigned a job in the bakery. (Exhibit A; Birkey Affidavit, ¶5).
12. Defendant Birkey based his decision to not recommend Plaintiff for a bakery job assignment solely on the good-faith belief that Plaintiff was not qualified to handle food and therefore not an appropriate candidate for the a bakery job assignment. Defendant Birkey relied on the information contained in the vote sheet when making his decision. Defendant Birkey does not review inmate's medical records and is not privy to the information contained within the records unless it is brought to Defendant Birkey's attention by the Health Care Unit. (Birkey Affidavit, ¶6).
13. Plaintiff's medical records show that he was qualified to handle food by the Health Care Unit in October of 2004 and 2006. There is no evidence that he was ever not qualified to handle food. (Exhibit H; Angie Bruns Affidavit).
14. Plaintiff alleges that between November 1, 2005 and January 21, 2006 several inmates, mostly white, were hired at the bakery. (Plaintiff's Complaint, ¶ 18).
15. Inmate job assignments are done on a weekly basis at Illinois River Correctional Center. (Clark Affidavit, ¶8).
16. On November 7, 2005 one Hispanic inmate was hired at the bakery[2]. (Exhibit L; Clark Affidavit, ¶8).
17. On November 14, 2005 six inmates were hired for the bakery, of which four were black and two were white. (Exhibit M; Clark Affidavit, ¶8).
18. On November 21, 2005, three inmates were hired, of which one was white, one was Hispanic and one was black. (Exhibit N; Clark Affidavit, ¶8).
19. On November 28, 2005 thirteen inmates were hired for the bakery, of which six were white, six were black and one was Hispanic. (Exhibit O; Clark Affidavit, ¶8).
20. On December 5, 2005 no inmates were hired for the bakery. (Clark Affidavit, ¶8).
21. On January 9, 2006 no inmates were hired for the bakery. (Clark Affidavit, ¶8).
22. On January 16, 2006 four inmates were hired for the bakery, of which three were black and one was white. (Exhibit P; Clark Affidavit, ¶8).
23. On January 23, 2006 four inmates were hired, all four were black. (Exhibit Q; Clark Affidavit, ¶8).
24. Plaintiff alleges that some jobs were better paying than others at the bakery. (Plaintiff's Complaint, ¶108).

---

[2]Plaintiff lists fact numbers 16, 20, 25, 26 and 27 as immaterial. He argues that this information does not assist in the determinate of whether Plaintiff was discriminated against. The court disagrees and finds that these facts go to the heart of the matter as to whether Plaintiff's equal protection rights were violated.

25. Inmate pay at the Illinois River Correctional Center is based on Function 222 and is standardized for all inmates based on an administratively determined pay rate. (Exhibits J and K).
26. The pay is calculated based on a standard formula. The formula multiplies the hours worked times the standard pay rate. The inmates then get a percentage of this based on their experience level. (Exhibit J, ¶4).
27. The four inmate levels are probationary worker, trainee, advanced trainee and experienced worker. Probationary workers earn 30% of the hourly rate, trainee workers earn 50% of the hourly rate, advanced trainee workers earn 80% of the hourly rate and experienced workers earn 100% of the hourly rate. (Exhibit J, ¶¶3 and 4).
28. Defendant Dudek informed Plaintiff that he had been denied placement at the Illinois Correctional Industries Bakery because he did not meet minimum I.C.I. criteria for placement. (Exhibit G).
29. Specifically, Plaintiff was denied a position through the vote sheet process, of which Defendant Dudek was not a part, since all inmates hired in the bakery must be qualified food handlers since they may come into contact with food. (Dudek Affidavit, ¶¶ 4 and 5).
30. In his deposition, Plaintiff alleges Defendants were involved in a conspiracy to cover up his health care situation that they discovered. (Plaintiff's Deposition, p. 15).
31. Plaintiff admits he did not specifically address the conspiracy claim in his complaint. (Plaintiff's Deposition, p. 15).
32. Plaintiff admits that he has no evidence that Defendants were involved in a conspiracy. (Plaintiff's Deposition, p. 15, l. 6-10).
33. Defendants admit that the Health Care Unit had the responsibility to screen inmates and determine whether they were qualified to handle food. (Plaintiff's Exhibit D attached to his Response [76].
34. The prison official who designated Plaintiff as not a qualified food handler understood that such a designation would disqualify Plaintiff from any job assignments in bakery or dietary. (Plaintiff's Exhibit A, at pp 12-13).

Plaintiff lists additional material facts, but the court finds that his additional material facts (with the exception of fact number 6- listed above as undisputed material fact 33 and 8 listed as undisputed material fact 34) are not material to the resolution of the summary judgment:

1. It is not material that Plaintiff's request to be tested for hepatitis and syphilis has been denied.
2. Plaintiff provides no evidence indicates he needed a hepatitis or syphilis test or that he had either disease or that Defendants were aware that Plaintiff had any communicable disease.
3. Exhibits A & I do not suggest that Plaintiff's medical records were tampered with by someone.
4. Birkey's March 5, 2005 memorandum instructing Department Heads to not tell an inmate why he was denied a prison job assignment because it opens the way to grievances (Plaintiff's Exhibit C attached to his response [76]) is not material as to whether

   defendants discriminated against Plaintiff when hiring for bakery or whether they were deliberately indifference to his serious medical needs.
5. It is immaterial whether or not the vote sheet was in use at any time other than when Plaintiff was denied a job in the baker in 2006.
6. Plaintiff's belief that Dr. Osafa was the person who declared the plaintiff is not a qualified food handler is immaterial as it immaterial as to what Plaintiff believes. The only thing material are facts.
7. It is immaterial that Wexford Medical Services, Inc. was the health care provider at IRCC and that Wexford denied Plaintiff's request for a hepatitis and syphilis test. (Plaintiff's Exhibit A at pp. 12-13) It is immaterial that Wexford extracted and handled Plaintiff's blood in connection with his HIV test. (Id.) It is also immaterial that Wexford's employees, without any supervisor by this court or anyone else and that there is no certainty that it was Plaintiff's blood that was ultimately tested in connection with this matter. (Id.) These facts are not material as to whether the defendants discriminated against Plaintiff when hiring for the bakery or whether they were deliberately indifferent to Plaintiff's serious medical needs. Furthermore, Plaintiff has presented no evidence of misconduct by Defendants in this case.

Discussion and Conclusion

The court finds Defendants were not deliberately indifferent to any medical need of Plaintiff, much less a serious medical need because Plaintiff has no evidence that he indeed suffered any illness that he claims is a "mystery" illness and for which he was not treated. In order to state a cognizable claim against a prison official, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 104. Deliberate indifference requires the prison official to act with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) *quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Therefore, a prison official cannot be liable under the Eighth Amendment "unless he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. Further, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* At 837.

In the instant case, the court finds it is impossible for the Defendants to have been deliberately indifferent because Plaintiff had no illness. Plaintiff allege, and is unable to back up his allegation with any corroborating facts, documents or proof, that Defendants discovered an illness Plaintiff had and then tried to cover it up. Plaintiff alleges the symptoms of his mystery illness are a runny stuffed up nose and pain in his kidneys, but does not know what the illness may be. Furthermore, a runny stuffed up nose is common and generally not serious. However, Plaintiff has absolutely no evidence of this illness. Plaintiff has no medical records reflecting this illness and no doctor has ever diagnosed him with an illness. Plaintiff has not been diagnosed with HIV, Tuberculosis or Hepatitis. Further, Defendants are not medically trained and did not

6

provide medical care to Plaintiff.   As discussed above, there is absolutely no evidence that Plaintiff had any illness.  It is therefore impossible for Defendants to have been indifferent to a mystery illness that he does not have.  Therefore, the court finds there is no way the Defendants could be found to have a sufficiently culpable state of mind when Plaintiff does not even have an illness.

Further, the court finds Defendants did not discriminate against Plaintiff and are entitled to summary judgment because Plaintiff again has no evidence to show intentional discrimination against him because of his membership in a particular class.  First, the court notes that prisoners in Illinois have neither a liberty nor a property interest in their work assignments.  *Wallace v. Robinson,* 940 F.2d 243, 246-49 (7th Cir. 1991).  However, "[p]risoners do not surrender their rights to equal protection at the prison gate."  *Williams v. Lane,* 851 F.2d 867, 881 (7th Cir. 1998).  Racial discrimination in the administration of state prisons violates the Equal Protection Clause of the Fourteenth Amendment.  *Black v. Lane,* 824 F.2d 561, 562 (7th Cir. 1987).  However, a person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. *Huebschen v. Department of Health and Social Services,* 716 F.2d 1167, 1171 (7th Cir. 1983).  When there is no evidence of discriminatory conduct, summary judgment on an equal protection claim should be granted. *Wilson v. Schomig,* 863 F.Supp 789, 794 (ND IL 1994) (The district court granted the defendant's motion for summary judgment on an equal protection claim because there was no evidence of any racially discriminatory conduct by defendant when assigning an inmate to a prison job).  Defendants are entitled to summary judgment in this case because Plaintiff has no evidence of intentional discrimination against him because of his membership in a particular class.  Plaintiff has no evidence that he was denied a job in the bakery due to his race.  From a review of the facts before this court, Plaintiff was denied a job in the bakery by the institutional vote sheet.  The institutional vote sheet is the process by which inmates are administratively approved or denied for institutional jobs at the prison.  During the vote sheet process the screening committee makes recommendations as to whether an inmate should be assigned a particular job. The screening committee is made up of various prison staff and that committee ensures that a job assignment for a particular inmate is appropriate, taking into consideration the inmate's background and history.  In this case, the only Defendant involved in the vote sheet process was Defendant Birkey.
Plaintiff could not work at the bakery unless approved through the vote sheet process. Being approved for hire by the bakery means that an inmate has submitted the required documentation to the bakery to be considered for hire.  An inmate must be approved by the vote sheet process before they can be hired for any institutional job, including the bakery.  Defendant Birkey recommended that Plaintiff not be assigned a job in the bakery at Illinois River Correctional Center.  Defendant Birkey based this decision on the belief that Plaintiff was deemed not qualified to handle food by the Illinois River Health Care Unit.  The vote sheet that Plaintiff received indicated through a checked box that Plaintiff was not qualified to handle food.  As all inmates who work in the bakery must be qualified to handle food, Defendant Birkey recommended Plaintiff not be assigned a job in the bakery.  Defendant Birkey based his decision to not recommend Plaintiff for a bakery job assignment solely on the good-faith belief that

Plaintiff was not qualified to handle food and therefore not an appropriate candidate for the a bakery job assignment. The plaintiff does not dispute Birkey's assertion of his reason for his decision. Defendant Birkey relied on the information contained in the vote sheet when making his decision. Defendant Birkey does not review inmate's medical records and is not privy to the information contained within the records unless it is brought to Defendant Birkey's attention by the Health Care Unit.

Prior to filing the instant complaint, Plaintiff was a qualified food handler during his time at Pinckneyville Correctional Center. Plaintiff's medical records show that he was qualified to handle food by the Health Care Unit in October of 2004 and 2006. There is no evidence that he was ever not qualified to handle food. This mistake was unfortunate for the Plaintiff, however, a person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual or a mistake was made. Negligence is not actionable under §1983. *Davidson v. Cannon,* 474 U.S. 344, 347 (1986). Unfortunately, this mistake may have been unfair to Plaintiff and prevented him from being hired in the baker, but it does not rise to the level of a constitutional violation. Most important, the facts clearly show that there were no discriminatory hiring practices in the bakery. The facts before this court are contrary to Plaintiff allegations that between November 1, 2005 and January 21, 2006 several inmates, mostly white, were hired at the bakery. This allegation by the Plaintiff was an obvious fabrication. The record before this court show that inmate job assignments are done on a weekly basis at Illinois River Correctional Center. On November 7, 2005, one Hispanic inmate was hired at the bakery. On November 14, 2005, six inmates were hired for the bakery, of which four were black and two were white. On November 21, 2005, three inmates were hired, of which one was white, one was Hispanic, and one was black. On November 28, 2005, thirteen inmates were hired for the bakery, of which six were white, six were black, and one was Hispanic. On December 5, 2005 and January 9, 2006, no inmates were hired for the bakery. On January 16, 2006, four inmates were hired for the bakery, of which three were black and one was white. On January 23, 2006, four inmates were hired, all four were black. From the above facts, it is clear that "mostly white inmates" were not hired and that there was no discrimination in the bakery hiring process.

Further, Defendants contend that inmates are not paid in a discriminatory fashion at Illinois River Correctional Center. Plaintiff alleges that some jobs were better paying than others at the bakery. However, the record before this court belies the plaintiff's allegations. Inmate pay at the Illinois River Correctional Center is based on Function 222 and is standardized for all inmates based on an administratively determined pay rate. The pay is calculated based on a standard formula. The formula multiplies the hours worked times the standard pay rate. The inmates then get a percentage of this based on their experience level. The four inmate levels are probationary worker, trainee, advanced trainee, and experienced worker. Probationary workers earn 30% of the hourly rate, trainee workers earn 50% of the hourly rate, advanced trainee workers earn 80% of the hourly rate, and experienced workers earn 100% of the hourly rate. The court agrees with the Defendants' assertion that there is no discrimination in pay rate based on race or medical status. Furthermore and most important, because the Plaintiff was never hired by

the bakery to begin with, he has no basis to raise this claim. The court finds that because Plaintiff was denied a job at the bakery for what at the time appeared to be a legitimate reason (although mistakenly) and since there is no evidence of discrimination and the facts clearly prove that inmates of all races were being hired at the bakery, Defendants are entitled to summary judgment.

Furthermore, the record before this court shows that Defendants Miller, Huggins, Randolph Clark and Dudek were not personally involved in the decision to deny Plaintiff a job in the baker. Defendants in a §1983 case can only be held liable for their own wrongdoing. *Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir. 1985). Further, there is no respondeat superior liability. *Id.* Further, public employees are responsible for their own misdeeds but not for anyone else's. *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009). Plaintiff has submitted no evidence that Defendants Miller, Huggins, Randolph, Clark, and Dudek were involved in the decision to deny Plaintiff a job assignment in the bakery. In fact, quite the opposite, these as already discussed above, the final hiring decision is made through the vote sheet process. The only Defendant involved in the vote sheet was Defendant Birkey. Defendant Dudek did inform Plaintiff that he had been denied placement at the Illinois Correctional Industries Bakery because he did not meet minimum I.C.I. criteria for placement. Dudek therefore was only a messenger, not a decisionmaker as to the denial. Plaintiff was denied a position through the vote sheet process, in which Defendant Dudek did not participate. Defendant Birkey is the only defendant who was personally involved in the decision to deny Plaintiff the job. Therefore, all other defendants are entitled to and granted summary judgment because they lack personal involvement.

Further, Plaintiff did not raise a claim of conspiracy in the complaint before this court and he has not has not been granted permission by this court to add a conspiracy claim to his lawsuit. Furthermore, Plaintiff has presented no evidence of a conspiracy to cover up his health status. In his deposition, Plaintiff alleges Defendants were involved in a conspiracy to cover up his health care situation that they discovered. However, he has presented no evidence of any conspiracy and he admits that he has no evidence that Defendants were involved in a conspiracy. Plaintiff admits he did not specifically address the conspiracy claim in his complaint. Therefore, the court finds that because the plaintiff did not raise a conspiracy claim in his complaint, it will not be considered.

This was the time for plaintiff to present his evidence, and he has presented none, other than a self-serving affidavit, which the Seventh Circuit has said is not adequate. The court finds Plaintiff's claims were based on nothing but his own speculation. *See* Plaintiff's Deposition. Further, the court finds this lawsuit is frivolous**.** Therefore, defendants are entitled to summary judgment in this case.

It is therefore ordered:

1. Defendants' motion for summary judgment [67] is granted. The clerk of the court is directed to enter judgment in favor of Defendants, Richard Birkey, Tiffanie Clark, John Dudek, Ed Huggins, Jackie Miller and Austin Randolph and against Plaintiff pursuant to Fed. R. Civ. P. 56, **at the close of this case**.
2. If the plaintiff wishes to appeal this order, he must file a notice of appeal with this court **within 30 days of the entry of judgment.** Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).
3. The court finds this lawsuit is frivolous.

Enter this 18th day of August 2010.


**\s\Harold A. Baker**
_____
Harold A. Baker
United States District Judge